In the Matter of the Petition of LLOYD M. HOWELL, Respondent, to Enforce an Attorney's Lien.

LAURA A. CREGAN, Individually and as Administratrix with the Will Annexed of JANE A. MCKENNA, Deceased, Appellant.

Attorney and client — contract made near close of litigation will be carefully scrutinized by courts and construed most strongly against attorney — costs and allowances belong to party not to attorney.

1. An alleged contract made between attorney and client at the close of a trial when the relation had existed for a long time and was still in force will, in view of the confidential relations between the parties, be carefully scrutinized by the courts in determining its validity and conclusiveness. It is incumbent upon the attorney to show that the provisions are fair and reasonable and were fully known and understood by the client.

2. In a proceeding to enforce an attorney's lien based upon a writing prepared by the attorney and signed by the client at a time when the litigation was practically ended and all legal services necessary therein had been rendered, which provided that the client would pay to the attorney a balance remaining unpaid under a former contract for services in the litigation, "said sum to be net, and over and above the necessary disbursements already incurred and to be incurred in the case, and said sum to be in addition to any sum that may be allowed by the court to my said attorney for his services," it appeared, that on termination of the litigation, allowances to the client and others were made out of the principal of a trust fund created by the said client for her own benefit. *Held*, that the writing must be construed most strongly against the attorney; that costs and allowances in an action or proceeding belong, not to the attorney, but to the party to the action; that the allowance to the client should be construed as made to her to enable her to reimburse herself in part for expenses incurred by her in the litigation which included attorney's fees and not allowed as an extra and additional compensation to her attorney.

*Matter of Howell*, 166 App. Div. 894, reversed.

(Argued May 25, 1915; decided July 13, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered

February 26, 1915, which modified and affirmed as modified an order of Special Term confirming the report of a referee appointed to determine the amount of an attorney's lien.

The facts, so far as material, are stated in the opinion.

*Marcus T. Hun* for appellant. The costs and allowances belong to the client, especially where the compensation of the attorney is otherwise agreed upon. (*Earley* v. *Whitney*, 106 App. Div. 399; *Caccia* v. *Isecke*, 123 App. Div. 779.)

*Floyd M. Howell* and *Jacob H. Shaffer* for respondent. The contract of June 6, 1910, and the circumstances of its execution, clearly show that it was the intention of the parties that Jane A. McKenna should pay to petitioner $1,655.90 in addition to the allowance of $1,000 which he has already received. (*Smith* v. *Kerr*, 108 N. Y. 31; *Clark* v. *Devoe*, 124 N. Y. 120; *Coleman* v. *Beach*, 97 N. Y. 545; 1 Beach on Cont. § 708; *Burr* v. *B. Ins. Co.*, 16 N. Y. 267; *Jackson* v. *Frost*, 5 Cow. 346; *Kelly* v. *Upton*, 5 Duer, 336; *Tucker* v. *Meeks*, 2 Sweeny, 736; *Henschel* v. *Mahler*, 3 Hill, 132; *Potthoff* v. *A. C. Co.*, 143 App. Div. 161.)

HOGAN, J. February 16th, 1903, Jane A. McKenna, then about seventy years of age, evidently by reason of advanced years and with a view of being relieved of the cares incident to her property, by a certain trust deed conveyed her real and personal property to one William J. Cregan, as trustee, and directed him to pay to her the net income for life and at her death to pay over the remainder share and share alike to said William J. Cregan and Laura A Cregan. Within a few years thereafter William J. Cregan at a time when he was indebted to the trust estate in a large amount commenced an action in the Supreme Court for an accounting. Jane A. McKenna was made a party defendant. She employed

a firm of competent attorneys to represent her in that action, under an agreement to pay the sum of $3,500 for such services, and they evidently protected her interest so long as they continued to represent her.

March 23d, 1909, an interlocutory judgment was entered in that action, wherein the People's Trust Company was appointed as substituted trustee of the trust and William J. Cregan was required to file an account of his transactions as trustee. The petitioner claims that upon entry of the interlocutory judgment, the firm of attorneys representing Jane A. McKenna expressed a desire to be released from the case and turned the same over to him, stating that they would not charge Mrs. McKenna as much as she had agreed to pay, but would charge only the sum of fifteen hundred dollars and their disbursements, assuming that they dropped out of the case and the petitioner became her attorney. April 7th, 1909, the petitioner was substituted as attorney for Jane A. McKenna, and acted as such for fourteen months before any further attempt was made by him to make any change as to compensation.

On June 6th, 1910, the petitioner procured Jane A. McKenna to sign a paper prepared by him of which the following is a copy:

"I, Jane A. McKenna, of 181 Sixth Avenue, Brooklyn, N. Y., do hereby promise and agree to pay to Lloyd M. Howell, as and by way of compensation for his services as attorney for me, in the case of Cregan v. McKenna et al., now pending in the Supreme Court, Second Department, of this State, the sum of one thousand six hundred fifty-five and 90-100 ($1,655.90) dollars, said sum to be net, and over and above the necessary disbursements already incurred and to be incurred in the case, and said sum to be in addition to any sum that may be allowed by the court to my said attorney for his services.

"Dated June 6th, 1910, at Brooklyn, N. Y.

"JANE A. McKENNA."

That paper was signed a little over three months before the report of the referee on the accounting which was dated September 23, 1910. The amount stated in the writing, $1,655.90, was the balance of the sum of $3,500 Jane A. McKenna was to pay her former attorneys less the sum of $1,500, their charges together with disbursements made by them. The report of the referee was confirmed November 5th, 1910, and final judgment ordered and entered. That judgment which is a part of the record here determined that William J. Cregan, the plaintiff in the action, was indebted to the substituted trustee in the sum of $22,367.71 and to Jane A. McKenna, the beneficiary under the trust deed, in the sum of $27,230, for which sums the trust company and Jane A. McKenna were awarded judgment, and the same were adjudged to be liens on the remainder interest of William J. Cregan in the trust estate. The petitioner appeared as attorney for Jane A. McKenna on the motion to confirm the report and for final judgment, and without objection on his part, notwithstanding the administration of the trust by Cregan, as shown by said judgment, Cregan was awarded $502.32 costs and disbursements and an additional allowance of one thousand dollars. Other allowances made in the judgment were to Laura A. Cregan $66.34 costs and $1,000 allowance, to a guardian *ad litem* $65.25 costs and $250 allowance, to the People's Trust Company $1,362.61 costs and $1,000 allowance, to Jane A. McKenna $427.41 costs and $1,000 allowance, all of which amounts were directed to be paid out of the *principal* of the trust fund, and were made liens upon the remainder interest of the plaintiff, William J. Cregan.

The trust company paid to the petitioner the allowance made to Jane A. McKenna, besides her costs, which allowance he claims belongs to him. If the petitioner can sustain such claim Jane A. McKenna's effort to provide for herself during life would result had she lived, by reason of the litigation, in the depletion of the income and prin-

cipal of her trust fund to the extent of eleven thousand dollars, and of the balance a large part would exist in a mere indebtedness due from one of the remaindermen who had been removed as trustee.

Jane A. McKenna died January 12th, 1914; Laura A. Cregan was appointed administratrix with the will annexed of her estate. The petitioner instituted this proceeding under section 475 of the Judiciary Law to procure a determination and enforcement of a lien for services. An order of reference was made and the referee reported that there was due to the petitioner the sum of $1,655.90 and interest from November 5th, 1910. The report was confirmed, with costs amounting to $182.40, and the administrator was ordered to pay petitioner said sums.

Upon appeal the Appellate Division modified the order by striking out the allowance of $182.40 upon the ground that the administrator did not unreasonably resist the claim of the petitioner, and further modified the order so that the same should be in the form of a final order foreclosing the lien.

The referee before whom the proofs were made did not make specific findings of fact and conclusions of law. His report is a combined report and opinion. Some statements of fact contained therein are unsupported and contrary to the evidence, and the legal conclusions founded thereon cannot be sustained.

The record does not disclose a satisfactory reason why the petitioner permitted the judgment embracing the allowances to be entered without objection, or, if objected to, without appeal therefrom. William J. Cregan, as trustee, could only be indemnified out of the trust property for expenses incurred by him in the *faithful* performance of his duties as trustee. The fact that he was removed as trustee and found indebted to the trust estate in the large sum heretofore stated indicates malfeasance on his part as trustee. He was in the position of an

unsuccessful litigant. He was not entitled to any costs, expenses or commissions. On the contrary, he could have been charged personally with costs. Trustees who faithfully perform duties imposed upon them are entitled to be allowed their reasonable expenses for rendering and proving their accounts, "but the counsel for the other parties who attended to protect the interests of such parties in the accounting, should look to their respective clients for their compensation, and we are not aware of any rule or principle whereby any of these parties are entitled to call upon others to pay counsel fees which they incur on their own behalf for the protection of their personal interests." (*Savage* v. *Sherman*, 87 N. Y. 277, 285, cited and applied in *Matter of Application of Holden*, 126 N. Y. 589, 594.)

The referee considering the writing of June 6th, 1910, said that under the Code costs and allowances must be made to the parties and not to attorneys, and construed the agreement, that excluding petitioner's right to the allowance would be to construe the deliberate act of the parties in so far as reference in the agreement is made to the allowances to be made by the court as meaning nothing and the agreement would be impossible of performance. " * * * It makes no difference to Mrs. McKenna when fixing the amount of his (petitioner's) compensation in addition to the stipulated sum fixed by the agreement whether the allowance was made to her or her attorney."

The case at bar does not involve the question of contingent fees. When Jane A. McKenna employed attorneys to defend the action commenced by Cregan, she entered into a contract to pay for all legal services to be rendered therein the sum of $3,500. When the petitioner assumed charge of the action, under the circumstances related, he understood that his compensation was to be the sum of $3,500, less the sum of $1,500 and the lawful disbursements to be paid the former attorneys, or the sum of $1,655.90. He proceeded to act as attorney for Jane A.

McKenna upon that understanding from April 7th, 1909, to June 6th, 1910, a period of fourteen months down to the eve of the report of the referee. The inference from the record is clear that all services save confirmation of the report of the referee, and entry of final judgment preceded the date of the writing of June 6th, 1910. The rule of law relating to original contracts of retainer is not applicable in the case at bar. Here we have the alleged contract made at the close of a trial at a time when the relation of attorney and client had existed for a long period of time and was still in force. In determining the validity and conclusiveness of such contracts, in view of the confidential relation between the parties, the same will be carefully scrutinized by the courts.

In some jurisdictions it has been held that such agreements are void. In other states contracts of such character are held to be affirmatively invalid on the ground of fraud, and the burden is on the attorney to show the fairness of the transaction in that the compensation provided for does not exceed a reasonable compensation for the services rendered or to be rendered. In this state it has been held that as to contracts made between the attorney and his client, subsequent to the employment which are beneficial to the attorney, it is incumbent upon the latter to show that the provisions are fair and reasonable, and were fully known and understood by the client. (*Boyd* v. *Daily*, 85 App. Div. 581; affirmed, 176 N. Y. 613; *Whitehead* v. *Kennedy*, 69 N. Y. 462, 466.)

The suggestion of the referee that there was no evidence in the case of fraud or undue influence on the part of the petitioner would seem to imply that it was obligatory upon the defendant to show fraud or undue influence on the part of the petitioner. Such is not the law. (*Whitehead* v. *Kennedy, supra.*)

The statement of the referee that it made no difference to Mrs. McKenna when fixing the amount of the compensation of the petitioner, in addition to the stipulated

sum fixed by the agreement, whether the allowance was made to her or to her attorney, is contrary to the facts in the record contained. All allowances, including the one to William J. Cregan, were by the terms of the judgment to be paid by the trustee out of the *principal* of the trust fund which Jane A. McKenna had created for herself during life. How can it be assumed that she understood that fact and that the existence of the same did not make a difference to her? The principal of her trust fund was to be further depleted by a substantial sum at a time when by reason of mismanagement on the part of Cregan the principal of the trust fund had as appears from the judgment been depleted to the amount of $22,367.71, and she had in addition suffered a personal loss of $27,320.

. The writing signed by Jane A. McKenna was prepared by the petitioner at the time and under the circumstances hereinbefore referred to, and the same must be construed most strongly against the attorney. Jane A. McKenna at the time she signed the paper was about seventy-eight years of age. The litigation was practically ended and substantially all legal services necessary therein had been rendered. She had contracted to pay $3,500 for legal services in the litigation and services had been rendered for a long period of time under that contract by her former attorneys and by the petitioner. With an expensive litigation practically closed and her trust fund materially depleted the court is now asked to hold that the evidence justified a finding that she understood that she was to pay $1,000 additional counsel fees, and that allowances would probably be made to all other parties, payable from the principal of the trust fund. Before the court can so determine, evidence most satisfactory (in view of the professional relations between the parties) must be adduced, disclosing that Jane A. McKenna when she signed the contract in question executed the same with full knowledge of all the material circumstances known to the attorney who drafted the same, and who

now seeks to recover thereunder and that the contract was one free from fraud on his part or misconception on the part of Jane A. McKenna. Upon the hearing before the referee petitioner was permitted to testify to a conversation he had with Jane A. McKenna at the time the writing was signed, in violation of section 829, Code of Civil Procedure, but no objection was made to the evidence, consequently it cannot be considered here. We are of opinion that the writing of June 6th must be construed adversely to the petitioner.

It has long been established as the law of this state that costs and allowances in an action or proceeding belong not to the attorney but to the party to the action. (*McIlvaine* v. *Steinson*, 90 App. Div. 77; *Earley* v. *Whitney*, 106 App. Div. 399; *Caccia* v. *Isecke*, 123 App. Div. 779.)

In *Starin* v. *Mayor, etc., of N. Y.* (106 N. Y. 82) it was decided that cases may arise where the taxable costs in a number of actions may exceed the value of the services of an attorney, whereas in one case the amount thereof would not be the true measure of such compensation. Allowances are made to a prevailing party in an action or proceeding as an indemnity for his expenses which would not be covered by the ordinary taxable costs prescribed by the Code. Allowances are usually, when made, payable out of a fund in which several · parties have an interest. They are not ordinarily made to be paid by a successful party from his individual funds to other parties. The allowance to Jane A. McKenna should be construed as made to her to enable her to reimburse herself in part from the principal of the trust fund, which she could not otherwise reduce, for expenses incurred by her in the litigation which included attorney's fees, and not allowed as an extra and additional compensation to her attorney. Reasonable demands by attorneys are usually recognized and protected. In the present case, Jane A. McKenna died before this proceeding was commenced; she cannot

be heard as to the transaction; therefore an obligation rests upon the court to see to it that the interests of her estate are protected. The order in this case must be reversed, with costs to the appellant to abide the event, and the case remitted to Special Term, which would seem the proper tribunal for a rehearing of this proceeding.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, CUDDE-BACK, CARDOZO and SEABURY, JJ., concur.

Ordered accordingly.