IN RE ESTATE OF WILLIAM KELLY.

ALICE REED, Claimant-appellant, v. R. W. FUNK, Administrator, Appellee.

No. 43410.

JUNE 19, 1936.

Roberts & Roberts, for appellant.

Jones & White, for appellee.

1068

RICHARDS, J.—Appellant, Alice Reed, filed her claim against appellee as administrator of the estate of William Kelly. Allowance being resisted, the issues were tried to the court. The claim was allowed in part. Though both parties have appealed, they will be designated as above.

To make understandable the various items of the claim, we first outline the following conceded matters: Decedent, Kelly, was an uncle of Thomas Reed, who is also deceased. The claimant, Alice Reed, surviving spouse of Thomas Reed, succeeded to the property of his estate. On August 9, 1921, the owners of certain real estate in Ottumwa entered into a written contract of sale thereof to Wapello Auto Company. The contract provided for deferred payments of a portion of the purchase price. Prior, to March 28, 1929, decedent, Kelly, had acquired by assignment the interests of the Wapello Auto Company as vendee in this contract. There remained unpaid $11,000 of the purchase price on March 28, 1929. On that date a written instrument was signed and delivered by Kelly and wife, described therein as first parties, and by Thomas Reed, described as second party. This instrument, after reciting Kelly's rights in the contract of August 9, 1921, as above described, then purports to assign to Reed an undivided half interest in said contract and the premises, in following language:

"Now for the consideration of Seventeen Thousand ($17,-000.00) Dollars to be paid by Thomas Reed, second party hereto, to William Kelly and Minnie Kelly, first parties hereto, the receipt of which sum is hereby acknowledged by said First Parties:

"The said first parties do hereby sell, assign, transfer and. set over unto said Thomas Reed, second party hereto, an undivided one-half interest in and to all the right, title and interest of first parties in and to said premises, and in and to the contract and the Extension Agreement above referred to.

"It is the purpose and intent of this present agreement that said William Kelly and said Thomas Reed shall become joint owners and tenants in common of said premises, and that they are equally entitled to receive one-half (½) of the net rents and income of said premises after deducting taxes, special assessments and insurance.

"The said first parties agree to pay the balance of Eleven Thousand ($11,000.00) Dollars with interest thereon, as pro-

vided in said Extension Agreement, and second party shall not be liable for any part of such principal or interest."

We now proceed to consider separately the items of the claim, the disallowances of which are assigned by claimant as errors.

On March 31, 1930, William Kelly and wife, and Alice Reed, successor in interest to her deceased husband, Thomas Reed, entered into a written contract with one Clingman and one Baker. This writing recited that on said March 31, 1930, the Kellys and Alice Reed were executing an assignment to Clingman and Baker of the contract of August 9, 1921, and that said so assigned contract would be held in escrow by the Ottumwa National Bank until Clingman and Baker shall have paid a consideration of $11,000 for the assignment, in installments, to wit, $1,000 on March 31, 1930, $4,000 on April 15, 1930, $3,000 on October 15, 1930, and $3,000 on April 15, 1931; that, upon final payment of said aggregate sum of $11,000 with interest, said bank shall deliver the contract so assigned to Clingman and Baker; that, if any payments remain in default 60 days, a forfeiture of the contract and payments may be declared by the assignors; that Clingman and Baker assume payment of $11,000 of the original purchase price called for in the contract of August 9, 1921. Of the payments just above set out, but two were made, namely, $1,000 paid on date of contract to the broker representing the Kellys and Alice Reed in the transaction, and $4,000 paid to Kelly on April 15, 1930. The remaining payments being defaulted, the contract of March 31, 1930, was forfeited and annulled.

Based on foregoing facts, claimant set out in her claim as one item due her, the following: "Claimant's share of amount paid by Clingman on purchase of said Second Street property, $2,500.00." This amount, $2,500, would be half of the $5,000 payments made by Clingman. Later by a first amendment to her claim appellant takes the position that she was entitled to the whole $5,000 instead of a share thereof as originally stated in her claim, and alleges that she let Kelly use one-half of these amounts, or $2,500, upon his agreement that he was to pay her whenever she asked for it. No evidence of any such arrangement or agreement appears in the record. Later claimant abandoned the allegations as made in her above mentioned first

amendment, and alleged in lieu thereof that the two payments aggregating $5,000 belonged to claimant, and that all of this amount, except $500 paid for commission and taxes, and except $2,000 received by claimant out of the $4,000 payment, was retained by Kelly, and that claimant therefore makes claim for $2,500 with interest.

After these various shifts of position by claimant, this $2,500 item was submitted to the court upon the bare allegation of claimant that all of the $5,000 belonged to her. This allegation was not supported by any semblance of evidence. In the absence of such evidence, claimant relies in argument solely upon a theory that there was a presumption that the $5,000 belonged to claimant. She says this presumption arose from the fact that, when the contract of March 31, 1930, was made, Kelly received half of the consideration paid by Clingman and Baker because they assumed Kelly's obligation to pay the $11,000 remaining unpaid on the contract of August 9, 1921. This reason assigned by claimant for the alleged presumption is without basis in fact, because Clingman and Baker paid no part of the mentioned $11,000 nor by any act did Kelly or claimant treat Clingman's assumption as a payment, but on the contrary, what they actually did with respect thereto was to voluntarily extinguish the undertakings of Clingman and Baker by forfeiting the contract of March 31, 1930. There is insufficient showing in the record to warrant holding that such a presumption arose.

Nor is there any showing that would warrant the court in sustaining claimant's further argument that there arose a quasi-contract, an obligation created by law for reasons of justice, compelling Kelly to pay claimant all of the $5,000. In the contract of March 28, 1929, Kelly's undertaking to pay the $11,000 was without restriction or designation as to time or manner of payment, excepting that it was to be made as provided in a certain extension agreement. By the terms of this extension agreement the debt was not due until August 9, 1934. There was no agreement of the parties in the contract of March 28, 1929, that Reed would have any manner of security for Kelly's agreement to pay $11,000. In the contract of March 31, 1930, is found confirmation that there was to be no such security in the fact that this contract provided that the various cash payments to be made by Clingman and Baker should be paid to Kelly and to claimant. Thus it would appear that claimant's contention that a quasi-

contract arose is in effect a proposition to remake the contracts specifically entered into by the parties. Such remade contract would compel Kelly to redeem his agreement to pay the $11,000 in 1934, by turning over to claimant long prior thereto, in 1930, the Clingman payments, and would afford claimant security never bargained for. Nor do we find in the record any fortuitous happenings or changes in the situation subsequent to the making of the contracts that would warrant the court in holding that such quasi-contract has been created by law for reasons of justice. On the contrary, the forfeiture of the Clingman contract left Kelly and claimant in this position, claimant was restored to her original interest in the contract and real estate, she still had Kelly's original agreement to pay the $11,000, and she had her half interest in the apparent increment, that is, the forfeited payments made by Clingman, being all to which she and her deceased husband were entitled as agreed in their two contracts. Quite apparently there was no room for the creation by law, for reasons of justice, of a quasi-contract different from the express agreements the parties had made. Claimant also contends that, even though there was no presumption that she was entitled to more than half of the $5,000, yet she is entitled to be allowed $250 on account of the $1,000 initial payment made by Clingman; that is, she contends that she is entitled to an allowance of $250, being half of the $500 remaining out of the $1,000 after the commission and taxes were paid. We are compelled to hold against this contention because the record traces this $1,000 no further than into the hands of the agent; there being no showing that it reached the hands of Kelly. We find no error in the disallowance of this $250 item.

Our conclusion makes unnecessary consideration of the admissibility of certain evidence to establish appellee's defense that the agreement to pay the $11,000 was without consideration, and but an unexecuted promise to make a gift.

Claimant assigns as error the disallowance of an item for recovery of one-half of $281.23 alleged to have been paid by claimant for insurance. The evidence establishes without dispute the payment of the $281.23 by claimant; that necessary insurance was thereby procured for the real estate in question; that claimant was entitled to reimbursement of one-half thereof from Kelly. No defense or showing of payment appears in the

record. The district court, evidently overlooking some part of the voluminous record, erred in disallowing this item.

Another item of the claim sought contribution of one-half of $425 expended by claimant for repairs to the real estate. The court offsetting against the $425 the sum of $100 alleged by appellee to have been expended by Kelly for other repairs, this item was allowed for one-half of $325. The $425 was paid by claimant for proper repairs ordered and approved by Kelly. There is also sufficient evidence to establish expenditure by Kelly of $100 for additional repairs. There was evidence that each was entitled to contribution from the other. We find no error with respect to this item.

Claimant assigns as error the refusal to allow an item based on three checks aggregating $255, alleged to have constituted a loan to Kelly. This item was first made a part of the claim by an amendment filed subsequently to the close of the evidence and discharge of the witnesses. On motion the item was ordered stricken because filed too late. This order is not assigned as error, and is not before us for review. But, if this item were to be considered on its merits, the record shows that, although the checks had been offered in evidence, the question whether they constituted a loan to Kelly is not the subject of any direct testimony, claimant depending upon inferences by no means conclusive. It follows that upon neither holding can it be said there was error.

After the close of the evidence and the discharge of the witnesses, appellant by amendment claimed interest upon each item of her claim from various dates. Upon motion, this claim for interest was ordered stricken because tardily filed. This order is not assigned as error, and the ruling is not before us for review. But, were the matter to be considered upon its merits, there would be found no error. The court could correctly hold as it did, that the many items of the claim and counterclaim, except the $2,000 loan on which interest was allowed, were items of an open account between the parties on which interest did not accrue until six months after the date of the last item, or from the date the balance upon the accounts was ascertained. However, the amount allowed should draw interest at the legal rate from date of allowance.

The foregoing disposes of appellant's assignments of error and one of appellee's assignments, leaving for consideration ap-

pellee's second assignment, wherein he says there was error in the allowance of an item of $2,000, alleged to have been loaned by claimant to Kelly on September 12, 1929. That claimant turned over $2,000 to Kelly on that date is established without dispute. The source of the money was insurance upon the life of claimant's deceased husband, collected and deposited in bank by claimant in August, 1929. The substance of the assignment is that claimant did not establish that Kelly received the money as a loan, creating a liability on his part. Upon that question there was testimony of a competent witness that until shortly before his demise decedent paid claimant each month the sum of $12 interest; the witness testifying that she was present on nearly every such monthly occasion, hearing Kelly's statement that the payments were interest on the $2,000 he owed claimant. She also testified she heard Kelly's statement that the payments were interest on money he had borrowed. It was for the court to determine the credibleness of this evidence. By adopting the testimony as true, the court had warrant, in connection with the other facts shown, to find that the transaction constituted a loan. In allowance of this item we find no error.

It follows the case is affirmed on appeal of appellee-administrator and reversed on appeal of appellant-claimant and remanded to the district court for modification of allowance of claim in accordance with this opinion.

Affirmed on appellee's appeal.

Reversed and remanded on appellant's appeal.

DONEGAN, C. J., and ANDERSON, HAMILTON, PARSONS, MITCHELL, STIGER, KINTZINGER, and ALBERT, JJ., concur.