In the Matter of the Estate of John J. Van Nostrand, Deceased.

Surrogate's Court, Kings County, November 26, 1940,

*Stewart & Shearer* [*Robert A. West* of counsel], for the United States Trust Company, trustee, petitioner.

*Spencer, Ordway & Wierum* [*Otto C. Wierum* and *George J. Schaefer* of counsel], for Nannie Van Nostrand Marvin Rodman and Elizabeth Van Nostrand Marvin Butler, individually and as executrices, etc., of Fanny Van Nostrand Ramsdell, deceased, and for Elizabeth Van Nostrand Marvin Butler, as administratrix, etc., of Thomas P. Ramsdell, deceased.

*Sullivan & Cromwell,* for William Nelson Cromwell, Alfred Jaretzki, Jr., and Robert Morgan King, executors, etc., of Louisa B. Van Nostrand, deceased.

*Davies, Auerbach, Cornell & Hardy,* for the Irving Trust Company, trustee under the will of Anna B. Van Nostrand, deceased.

Dodd, J., Acting Surrogate. The question of construction here propounded relates to the meaning which John J. Van Nostrand, who died in January, 1889, had in mind by the use of certain somewhat inept phraseology inserted in the " ninth " item of his home-made, holographic will. By this item, as previously construed, he directed that four separate trusts be erected, measured by the lives of his three named children and a grandson, " the income from which to be paid to them on their individual rects. or by atty. the principal to remain during their natural lives and to revert to their legal heirs on their attaining the age of twenty-five years (with the privilege of their continuing the trust if they so desire)."

All three of the children of the testator and the grandson, whose lives, respectively, were the primary measurements of the four trusts, have successively died. The remainders of the first three trusts have been distributed. The present issue relates only to the manner of distribution of the remainder of the trust for the primary benefit of testator's daughter, Fanny Van Nostrand Ramsdell, who died on November 11, 1939.

The presently opposing contentions are, *first,* that the remainder devolves to the " legal heirs " of Fanny Ramsdell pursuant to the directions of the " ninth " item itself; and, *second,* that the remainder directions of this item are invalid, with the result that it passes pursuant to the residuary item of the will, which erected a trust for the benefit and measured by the lives of testator's children with a gift of the remainder " after their decease to their children."

The thesis of those who contend for the first noted position is predicated on two independent premises, namely, on the language of the " ninth " item itself and on the assertion that the issue is *res adjudicata* by reason of previous construction decrees.

The first of these litigations occurred in 1889 and was decided by that distinguished jurist, Mr. Justice Cullen, whose subsequent distinguished service as Chief Judge of the Court of Appeals from January 1, 1905, to December 31, 1913, is familiar to all students of New York legal history. He wrote an elaborate opinion which, unfortunately, is not reported, but a copy of which has been appended to the stipulation of facts. In this opinion, in referring to the item of the will which is the subject of the present construction, he observes: " But as to the main trust the parties concede,

in my opinion correctly, that the testator intended to create separate trusts; one for each beneficiary. In such case the absolute ownership of each share is suspended only during the life of its own beneficiary; a limitation authorized by statute. The trusts, the creation of which is directed by this clause, are therefore valid."

One further excerpt from this opinion is worthy of note. It reads: " The will is holographic. The testator was a layman. He uses language inaccurately, whether taken in its legal or in its ordinary sense, and also carelessly. In the fourth clause of his will he speaks of his unmarried daughter as his surviving daughter, though he names another living daughter in his will; a use of terms singular to himself, and not in accord with common notion regarding the married state. Similar mistakes and omissions of words appear throughout the will. One thing, however, is to be observed in the Fourth clause. The testator gives to his maiden daughter ten thousand dollars ' As a marriage portion, or upon arriving at the age of twenty-five years,' because as he says, his other children had each received that sum. This displays strong evidence that he intended to effect perfect equality among the claimants on his bounty. I think that in endeavoring to arrive at the testator's intention the Ninth and Tenth [sic. Eleventh?] clauses should be considered together. It will be observed that as to at least three of the beneficiaries, the trusts created by these clauses are exactly of the same general character. Every one provided for by the Eleventh clause of the will is also provided for in the Ninth. As to each, the beneficiary is to have the whole income, and upon his death the share to go to his representatives. The difference in the disposition in the two clauses is trivial."

The judgment, dated May 6, 1889, entered upon this opinion, provided in part: " That the ninth clause of the said last Will and Testament is valid, save and except " a provision which is presently immaterial.

In or about the year 1908 a proceeding was instituted in the Supreme Court, Westchester County, relating to the remainder devolution under the " Ninth " item of this will, which was terminated by a decree dated January 30, 1909, signed by Mr. Justice KEOGH. This provided in part " that the words ' legal heirs ' used in the Ninth paragraph of the will of said John J. Van Nostrand, (the elder) deceased, to designate the persons entitled to the principal of said trust funds upon the death of the respective holders of the life interests therein, mean the person or persons who shall be the heirs at law of such life tenants  *  *  *." It thereupon directed distribution of the principal of one of the four trusts, which had terminated, in accordance with this determination. This judgment

was unanimously affirmed by the Appellate Division ( *United States Trust Co.* v. *Van Nostrand*, 137 App. Div. 935) and by the Court of Appeals by a vote of six to one (201 N. Y. 517).

The petitioner contends that these determinations render the present issue *res adjudicata.* Its opponents assert that the joinder of an additional, apparently purely nominal, party, to the present record, who was not a party to the former adjudications, precludes such a result. Were it essential for a decision of the issues, the court would be inclined to agree with the petitioner. Even were this principle to be deemed inapplicable, however, it is not inconceivable that after these extended and searching litigations, the principle of *stare decisis* might be deemed pertinent. (See *Matter of Leverich*, 135 Misc. 774, 778; affd., 234 App. Div. 625.)

However this may be, the court is satisfied in part for the reasons so elaborately developed by Mr. Justice CULLEN in the original construction proceeding in 1889, that this remainder has been made the subject of effective disposition in the ninth item of the will. The crux of the present interpretation is as to whether or not the remainder interests of the several " legal heirs " of the life beneficiary were intended to vest in them upon the death of the holder of the prior use. This, in turn, is potentially affected by the connotation to be attributed to the word " revert."

Obviously, this word cannot be construed either in its usual lay or legal significance of " returning," since the described recipients would not previously have had possession of their respective shares, if the instructions of the testator were literally effectuated.

It is accordingly obvious that the present is a striking example of the condition respecting this will, noted by Mr. Justice CULLEN, that the testator " uses language inaccurately, whether taken in its legal or in its ordinary, sense."

What was his wish? Did he intend that vesting of the remainder gift should be postponed until the recipients, respectively, attained the age of twenty-five years, or did he contemplate that vesting should occur immediately on the death of the primary *cestui que* trust with possessory enjoyment only, postponed, until greater maturity had been achieved?

In the solution of this question, it is noteworthy that no gift over was directed in the event that any person within the description should die between the date of the death of the life beneficiary and attainment of the specified age. Even more striking, when the will is read in its entirety, is the circumstance noted with special clarity in the quoted portion of Mr. Justice CULLEN's opinion, of the obvious intent of the testator " to effect perfect equality among the claimants on his bounty."

The direction is ambiguous. It follows that use of the canons of construction in the solution of the issue is permissible. The first which is applicable is that which favors a determination of vesting of interests at the earliest moment compatible with the language of the will. (*Riker* v. *Gwynne*, 201 N. Y. 143, 149; *Bowditch* v. *Ayrault*, 138 id. 222, 228; *Whitman* v. *Terry*, 196 App. Div. 282, 287; *Matter of Rossiter*, 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583.) A second is that which prefers equality of distribution between family groups. (*Matter of Harden*, 177 App. Div. 831, 835; affd., 221 N. Y. 643; *Soper* v. *Brown*, 136 id. 244, 248; *Stokes* v. *Weston*, 142 id. 433, 439; *Matter of Knight*, 196 App. Div. 355, 358; *Matter of Pettit*, 241 id. 209, 211.)

Applying these principles of construction results in a determination that vesting of the remainders in the heirs of Fanny Ramsdell occurred immediately upon her death. By reason thereof, the direction for postponement of the time of possessory enjoyment is capable of deletion with the consequent effectuation of the result heretofore attained by Justices CULLEN and KEOGH, by the unanimous determination of the Appellate Division and six of the seven judges of the Court of Appeals.

There appears to be no controversy respecting the identity and shares of these heirs. They are enumerated as Francis Stanton Van Nostrand Dunkels, one-fourth; Elizabeth Van Nostrand Marvin Butler, one-fourth; Nannie Van Nostrand Marvin Rodman, one-fourth; Le Baron Sands Willard, Jr., one-twelfth; Nancy Gardiner Willard Orr, one-twelfth; John Van Nostrand Willard, one-twelfth, and distribution will accordingly be directed to these individuals in the proportions indicated.

Enter decree on notice in conformity herewith.